## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Real Estate Equity Strategies, LLC**
**a Minnesota Limited Liability,**                    **Civil No. 05-CV-1008 (JNE/SRN)**


       **Plaintiffs,**


**v.**                                         **REPORT & RECOMMENDATION**

**Internal Revenue Service,**
**Department of the Treasury,**


       **Defendant.**

---

Jack E. Pierce, Esq., on behalf of Plaintiff.

Michael R. Pahl, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

      This matter is before the Court upon Defendant's Motion to Dismiss (Doc. No. 4). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 42 U.S.C. § 636 and Local Rule 72.1.

## I.    BACKGROUND

      Plaintiff, Real Estate Equity Strategies, LLC ("Plaintiff" or "REES") is a limited liability company incorporated in Minnesota with its principle place of business in Eden Prairie, Minnesota. (Complaint, ¶ 4). Defendant is the Internal Revenue Service of the United States, Department of the Treasury ("IRS"). (Id., ¶ 5). At issue in this case is the property at 14909 Crone Drive, Minnetonka, Minnesota, 55345 ("the

Property"). (Id., ¶ 6). The Property consists of two parcels: Parcel 1 and Parcel 2. (Id.).

On July 27, 1990, James and Kathryn Moore purchased the Property from Brian and Kimberly Sherry by way of contract for deed. (Id., ¶ 7). Parcel 1 of the Property was subject to an existing mortgage, and Parcel 2 of the Property was acquired later when an easement on the Property was vacated. (Id.). Pursuant to the contract for deed, the Moores' terms of payment consisted of two components: they assumed the first mortgage already present on the Property, and they were required to make direct payments to sellers. (Id., ¶ 8). The contract for deed was sold to Fleet Finance. (Id.). The Moores' assumed mortgage was assigned to Midland Mortgage. (Id., ¶ 12). In 1995, the Moores satisfied the portion of the contract for deed requiring them to make direct payments to the sellers. (Id.).

From 1987 to 1994, the Moores had failed to pay, at least in part, their income taxes in the amount of $398,000. (Id.), ¶ 9). In June 1996, the IRS filed a federal tax lien against James Moore in Hennepin County. (Id., ¶ 11). The Moores filed for Bankruptcy on November 20, 2002, and they were released from their tax obligations on February 19, 2003. (Id., ¶ 10).

The Moores defaulted on the mortgage they had assumed for Parcel 1 of the Property and it became subject to foreclosure. (Id., ¶ 12). Parcel 1 of the Property was put up for Sheriff's Sale on September 16, 2004. (Id., ¶ 13). Avidigm Capital Group, Inc, purchased it for $90,000. (Id.). The Sheriff's Certificate of Sale was recorded in the Office of the County Recorder. (Id.). The Parties agree that the redemption period for the Property, was to expire on March 16, 2005, six months after the Sheriff's Sale. (Id., ¶ 16).

On March 14, 2005, the Moores granted Plaintiff REES six separate mortgages on the Property, each with its own independent consideration. (Id., ¶ 14). REES then filed six Notices of Intent to Redeem

2

and provided copies of each to the Hennepin County Sheriff.  (Id.).  REES calculated its last day to redeem as May 18, 2005.  (Id.).

The Complaint alleges that the IRS then filed three notices of Intent to Redeem without providing copies to the Hennepin County Sheriff.  (Id., ¶ 15).  Plaintiff calculated the IRS's last day to redeem the Property as April 6, 2005.

On April 11, 2005, the IRS presented funds to redeem the Property to the Hennepin County Sheriff. (Id., ¶ 16).  The Hennepin County Sheriff rejected the IRS's attempt to redeem the property and did not issue a Certificate of Redemption.  (Id., ¶ 17).  The Complaint alleges that the Sheriff informed the IRS that it did not have the authority to issue a certificate as the IRS had failed to provide the Sheriff's Office with a Notice of Intent to Redeem and their redemption period had already expired.  (Id.).

On April 12, 2005, the IRS drafted its own Certificate of Redemption pursuant to 26 U.S.C. § 7425(d) and, on April 15, 2005, directed the Hennepin County Sheriff to forward the proffered funds to Avidigm Capital Group, Inc. (Id., ¶ 18).  While only Parcel 1 was included in the foreclosure, the IRS's Certificate of Redemption lists both Parcel 1 and Parcel 2 as the property being redeemed.  The IRS also filed an Affidavit indicating that the Moores still owed $309,952.12 in outstanding tax obligations.  (Id., ¶ 19).

On May 17, 2005, REES attempted to redeem the Property from Avidigm Capital Group, Inc. (Id., ¶ 20).  Because the IRS had already issued its own Certificate of Redemption, Avidigm Capital Group, Inc. was unable to provide REES with one.  (Id.).  On May 18, 2005, REES provided $96,915.77 to the Hennepin County Sheriff.  (Id., ¶ 21).  The Sheriff responded that a Certificate of Redemption could not be issued because of the IRS's previously filed Affidavit on amount due.  (Id.).  Based on that Affidavit,

the amount provided by REES was insufficient to pay the IRS, a prior redeeming lienholder.  (Id.).  The

Sheriff agreed to hold the funds until a Court Order was issued directing the Sheriff to issue a Certificate

of Redemption.  (Id.).

Plaintiff brought an Action to Quiet Title alleging that the IRS improperly redeemed the Property.

As a result of the IRS's improper redemption, Plaintiff alleged that it was unable to exercise its own valid

right of redemption.  (Id., ¶ 22).  Plaintiff requests an Order declaring the IRS's Certificate of Redemption

invalid and that the IRS has no right, title or interest in or lien upon the Property.  (Id., ¶ 33).  Plaintiff also

seeks an Order directing the Sheriff to issue it a Certificate of Redemption.   In the alternative, Plaintiff

brings a claim for Damages alleging that the IRS's improper redemption deprived Plaintiff of the opportunity

to redeem the Property.  (Id., ¶ 35).  Plaintiff claims that the Property is valued at $365,000, and that

REES has suffered damages in excess of $265,000.  (Id., ¶ 23).

Defendant now moves for dismissal of Plaintiff's Complaint on the grounds that REES lacks

standing to bring its claims.  Defendant argues that because the Property had already been sold to Avidigm

when the Moores gave REES the six mortgages,  the mortgages were secured only by the Moores' right

of redemption, not by the real property itself.   As such, REES only possessed the Moores' right of

redemption, not an actual real property interest.  Because the Moores' contract for deed secured their

interest in the Property before the IRS's tax lien secured its interest, the Moores, or Plaintiff as their

assignee, were required to redeem the Property before the IRS.  Defendant disagrees with Plaintiff's

schedule of redemption rights and argues that Plaintiff, as assignee of the Moores' right of redemption, was

required to exercise its right of redemption by March 23, 2005, not May 18, 2005.  Because REES failed

to redeem during the required period, Defendant argues that REES lacks standing to bring its claims now

and the Complaint should be dismissed.

Plaintiff, however, responds that under the contract for deed, the Moores were the owners of the Property and as such, they had an ownership interest in the Property, not only the right to redeem the Property. Because their contract for deed was not canceled, REES argues that the Moores had a conveyable property interest until the redemption period on the foreclosed mortgage expired. Because the mortgages REES acquired were filed after the IRS filed their lien on the Property, REES argues that the IRS was required to redeem the Property before REES. Plaintiff argues that it only missed its redemption period as a result of the IRS's improper redemption, and as such, REES has standing to bring its claims.

## II.     STANDARD OF REVIEW

In the case of a defendant's motion to dismiss, the complaint should only be dismissed if it appears that the plaintiff cannot prove any set of facts that would entitle him or her to relief. Schaller Tel. Co. v. Golden Sky. Sys., Inc., 298 F.3d 736, 740 (8th Cir. 2002) (citing Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993)); Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998)(a motion to dismiss is properly granted when there is no set of facts that would allow the plaintiff to recover). The court is limited to considering the allegations of the complaint. County of St. Charles, Missouri v. Missouri Family Health Council, 107 F.3d 682, 684 n.3 (8th Cir. 1997). The Court is to assume the facts pleaded as true and to construe the facts in a light most favorable to the plaintiff. Gebhardt v. Con Agra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (citing United States v. Aceto Agr. Chemicals Corp., 872 F.2d 1373, 1376 (8th Cir. 1989)).

"If a plaintiff lacks standing, the district court has no subject matter jurisdiction." Young America

5

Corporation v. Affiliated Computer Services (ACS), 424 F.3d 840, 843 (8th Cir. 2005), quoting Faibisch

v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002). When a plaintiff's standing to bring the suit in federal

court is attacked, the plaintiff has the burden to prove that he has standing. Titus v. Sullivan, 4 F.3d 590,

593 (8th Cir.1993) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d

Cir.1977)). "In essence the question of standing is whether the litigant is entitled to have the court decide

the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). "To

establish standing, a party must, at a minimum, have suffered an 'injury-in-fact,' fairly traceable to the

defendant's conduct, which is likely to be redressed by a favorable decision." Brouhard v. Lee, 125 F.3d

656, 661 (8th Cir.1997).

## II.    DISCUSSION

Defendant has moved to dismiss Plaintiff's Complaint on the grounds that REES lacks standing to

bring its claim for Quiet Title. Specifically, Defendant argues that because REES failed to exercise its right

of redemption within the mandatory statutory schedule provisions, it has no right to the property or interest

in the property, and thus, no standing to bring this suit.

The Parties agree that a statutory redemption schedule is set forth which explains the time line for

redemption. However, the Parties appear to disagree as to where they fall in the schedule because they

disagree as to their respective roles, specifically who was the senior creditor and who was the junior

creditor. Plaintiff contends that Defendant was the senior creditor and required to redeem by April 6,

2005, while Plaintiff was the junior creditor and not required to redeem until May 18, 2005. Defendant

argues that Plaintiff, acting as the assignee of the Moores' secured interest, was actually the senior creditor,

thus required to redeem by March 23, 2005. Since Plaintiff failed to do so and therefore, the right of

6

redemption interest it once had in the Property has expired, Defendant argues that Plaintiff no longer has standing to bring its claim for quiet title to the Property.   Thus, central to this case is the determination of what actions were taken, and what were the Parties' interests in the Property when they took those actions.[1]

### A.      Statutory Schedule

The process by which creditors may exercise their rights of redemption is statutorily governed. After the sale of foreclosed property, the mortgagor may redeem the property at issue within six months of such sale.  Minn. Stat. § 580.23.  Minn. Stat. § 580.24 further explains:

> "If no redemption is made by the mortgagor, the mortgagor's personal representatives or assigns, the most senior creditor having a legal or equitable lien upon the mortgaged premises, or some part of it, subsequent to the foreclosed mortgage, may redeem within seven days after the expiration of the redemption period determined under section 580.23 or 582.032, whichever is applicable; and each subsequent creditor having a lien may redeem, in the order of priority of their respective liens, within seven days after the time allowed the prior lienholder by paying the amount required under this section. . . ."

The priority, for redemption purposes, is determined by the time of record without regard to the nature of the lien.  United States v. Dairy Farm Leasing Co., 747 F.Supp. 1334 (D.Minn. 199).

In this case, the relevant chronology of events, and created interests, is as follows: 1)  The Moores established an interest in the land when they purchased the Property and assumed the mortgage from the Sherrys by way of a contract for deed on July 27, 1990;  2)  The IRS established its interest in the Property when it filed a lien on the Property due to the Moores' failure to pay taxes;  3)  The Property was sold to

---

[1]  While Plaintiff also argues that Defendant wrongly or improperly exercised its right of redemption, the issue before this court focuses on Plaintiff's interest in the Property and the timing of its effort to exercise its right of redemption because the issue before the Court is whether Plaintiff has standing to bring this lawsuit.

7

Avidigm Capital Group, Inc. on September 16, 2004, after the Moores defaulted on the mortgage, and the Property was foreclosed upon; and 4) Plaintiff attempted to establish an interest in the Property when it received six separate mortgages from the Moores on March 14, 2005.

Plaintiff argues that it was the junior creditor because its interest was based on the mortgages which were filed after Defendant's interest through the tax lien. Thus, Plaintiff contends, Defendant had to redeem first, specifically by April 6, 2005, and Plaintiff did not have to redeem until after Defendant's right to do so expired. Plaintiff contends that its deadline to redeem as a junior creditor was May 18, 2005. Plaintiff attempted to exercise its right of redemption at that time, but could not as a result of Defendant's redemption.

Defendant argues that Plaintiff was the senior creditor because Plaintiff's mortgages were secured by the Moores' right of redemption, a right senior to the Defendant. Thus, Plaintiff had to redeem first, specifically by March 23, 2005. There is no dispute that Plaintiff did not exercise its right of redemption by that date. Defendant now contends that Plaintiff forfeited its interest in the Property and lacks standing to bring its action for quiet title.

### B. Plaintiff's Interest in the Property

A suit to quiet title is "an action to adjudge the respective estates, titles and interests of several claimants to land." Morris v. Brown, 941 S.W.2d 835, 843 (Mo.App. 1997); see also Connealy v. Mueller, 319 N.W.2d 86, 87 (Neb. 1982). It follows then, that a party bringing an action to quiet title must have an interest in the property at issue to have standing to bring such a suit. See eg. Bor-Son Bldg.Corp. v. Heller, 572 F.2d 174, 178 (8th Cir. 1978) (plaintiff not allowed to seek reinstatement of lien because he no longer held a valid and subsisting lien upon which to foreclose); E.J. Friedman Co., Inc. v.

United States, 6 F.3d 1355, 1358 (9th Cir. 1993) (absent holding an interest in a property, § 2410 does not allow plaintiff to bring an action to quiet title for the property); Shaw v. United States, 331 F.2d 493, 496-98 (9th Cir. 1964) (quite title action brought by wife of a tax payer against whom the IRS had filed a notice of tax lien dismissed because wife could not assert an invasion of her own property interest and therefore failed to state a claim of quiet title under § 2410); Thurmon v. Ludy, 914 S.W.2d 32, 34 (Mo.App. 1995) (plaintiff lacked standing to state a cause of action to quiet title because she did not have a legal interest in the property at the time she filed suit).  If a party waives its interest in the property, or otherwise forfeits its right to the property, a later action to quiet title for the property cannot stand. Raulerson v. United States, 786 F.2d 1090, 1091 (11th Cir. 1986) (plaintiff could not bring an action to quiet title under § 2410 because he had waived his interest in the property).

The purchaser of property at a sheriff's sale pursuant to foreclosure is granted possession of the property.  See eg.  United States v. Young, 806 F.2d 805, 807 (8th Cir. 1986).  What remains in the hands of the previous owner is a statutory right of redemption, which must be exercised within the statutorily allowed for time period.  See Minn. Stat. § 580.23.  Minn. Stat. § 580.24; See eg. Central Life Assur. Soc. v. Spangler, 216 N.W. 116 (Iowa, 1927).

> "It is long-settled under Minnesota law that foreclosure extinguishes the mortgage and that the purchaser at the foreclosure sale acquires a vested right to become the absolute owner of the property upon expiration of the redemption period, or, in lieu thereof, to receive the payment of the purchase price plus interest.  The mortgagor, on the other hand, retains only the equity of redemption, plus the rights to possession, rents, and profits of the property during the period of redemption."

Johnson v. First National Bank, 719 F.2d 270, 276 (8th Cir.1983), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), citing, In Re Klein, 9 F.Supp. 57, 59 (D.Minn.1934), and In Re Stacy, 9

F.Supp. 61, 64 (D.Minn.1934) ("The purchaser at the mortgage sale becomes the owner of both the

equitable and legal title.  Nothing remains in the mortgagor except an equity of redemption and the right to

occupy the property during the period of redemption.").

This right of redemption is a conveyable interest and may be mortgaged.  <u>Bovey DeLaittre Lumber</u>

<u>Co. v. Tucker</u>, 50 N.W. 1038, 1039 (Minn, 1892).  However, the interest that is transferred is the right

of redemption, not an actual real property interest.  <u>See</u> <u>eg.</u> <u>Bovey</u>, 50 N.W. at 1039; <u>Johnson v. First</u>

<u>National Bank</u>, 719 F.2d at 276 ("Accordingly, it is only the right of redemption, rather than the property

itself, which passes into the bankruptcy estate if the redemption period has not expired at the time of the

bankruptcy petition is filed."; <u>In Re Minter</u>, 314 R.R. 164, 168 (Bankr.W.D.Tenn.2004) ("It is only this

right of redemption though, and not the property itself, which becomes property of the estate."), <u>citing</u>, <u>In</u>

<u>Re Crawley</u>, 117 B.R. 457, 460 (Bankr.D.Minn.1990), <u>citing</u> <u>Johnson</u>, 719 F.2d at 276.  Thus, when the

owner of a right of redemption is "approaching the end of his period of redemption, he may barter to

another the remnant of his rights, both contractual and statutory.  In such a case, the right of redemption

carries the only value which the ownership has.  Such value is potential and can be realized only by the

exercise of the right of redemption.  The exercise of such right saves the ownership.  If the owner is not able

to exercise such right, then neither ownership nor right of redemption has any value."  <u>Central Life</u>, 216

N.W. at 117.  After the expiration of a redemption period, the owner of the redemption interest loses all

interest in the property.  <u>See</u> <u>In re Minter</u>, 314 B.R. at 168.

In this case, at the time the mortgages were issued, the foreclosure sale had already taken place,

and the land had been sold to Avidigm Capital Group, Inc.  Had Plaintiff purchased the mortgages from

the Moores prior to the sale of the land, Plaintiff's argument may have had merit.  However, such is not the

case, and this Court finds that Defendant's argument should prevail.

After a foreclosure sale, the land is owned, subject to certain conditions, by the purchaser, and the previous owner logically loses their property interest in the land. What they retain, however, for a limited time, is an interest in the form of a right of redemption. When the property was sold to Avidigm, the Moores lost their property interest in the land, but they retained a right of redemption. Thus, at the time they issued the mortgages to Plaintiff, they did not have an interest in the property itself. The mortgages, therefore, could not be secured with a real property interest. The mortgages were secured by the only interest the Moores retained in the Property, their right of redemption. The effect of the mortgages was to assign to Plaintiff the Moores' right of redemption. Accordingly, Plaintiff did indeed walk into the Moores' shoes and was required to exercise that right of redemption within the required statutory schedule, March 23, 2005.

Plaintiff argues that the Moores had a conveyable interest in the Property that they could mortgage. This Court does not disagree with that assertion, but finds that the Moores' conveyable interest was not a real property interest, but rather a right of redemption. Indeed, the case Plaintiff cites to, <u>Bovey v. Tucker</u>, 48 Minn. 223, (1892), does support the finding that the Moores could transfer the interest they had in property. It does not, however, stand for the proposition that the interest they could transfer was anything but a right of redemption.

Plaintiff's interest in the property was the right of redemption assigned to it by the Moores through the mortgages. Plaintiff, as an assignee of the Moores' right of redemption, was the senior lienholder and required to redeem by March 23, 2005. Plaintiff failed to do so and, as a result, forfeited its interest in the property. This Court finds that Plaintiff did not have an interest in the property at the time it brought its

current suit, and accordingly it has no standing to bring its claim.  Defendant's motion should be granted.

### III.    RECOMMENDATION

**THEREFORE, IT IS HEREBY RECOMMENDED THAT:**

    1.      Defendant's Motion to Dismiss (Doc. No. 4) be **GRANTED**.

Dated:  _November 28, 2005_      _s/Susan Richard Nelson_
                                    SUSAN RICHARD NELSON
                                    United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by _December 12, 2005_ after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.