UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Real Estate Equity Strategies, LLC,

       Plaintiff,

v.                                                                  Civ. No. 05-1008 (JNE/SRN)
                                                                    ORDER
Internal Revenue Service,
Department of the Treasury,

       Defendant.

This case is before the Court on a Report and Recommendation issued on November 28, 2005. The magistrate judge concluded that Real Estate Equity Strategies, LLC (REES), did not have standing to bring this lawsuit and therefore recommended the case be dismissed. REES filed objections, to which the Internal Revenue Service (IRS) did not respond. Based on a de novo review of the record, the Court declines to adopt the magistrate judge's Report and Recommendation.

## I.      BACKGROUND

The factual allegations and procedural history are more fully recited in the Report and Recommendation and are adopted herein. Briefly, this case concerns a dispute about the respective rights of REES and the IRS to redeem a parcel of property located at 14909 Crown Drive, Minnetonka, Minnesota (the Property). On July 27, 1990, James and Kathryn Moore purchased the Property by way of contract for deed from Brian and Kimberly Sherry. Pursuant to the contract for deed, the Moores assumed the mortgage already present on the Property and were required to make direct payments to the Sherrys.

The Moores satisfied the portion of the contract for deed requiring them to make direct payments to the Sherrys. However, they defaulted on the mortgage they had assumed for the

Property, and the Property became subject to foreclosure.  The Property was put up for Sheriff's sale on September 16, 2004, at which time Avidigm Capital Group, Inc. (Avidigm), purchased it for $90,000.00.  The Sheriff's Certificate of Sale was recorded in the office of the County Recorder.  The parties agree that the mortgagor's redemption period for the Property expired on March 16, 2005.

On March 14, 2005, the Moores granted REES six separate mortgages on the Property, each with its own independent consideration.  REES then filed six Notices of Intent to Redeem and provided copies of each to the Hennepin County Sheriff.

The IRS also filed three notices of Intent to Redeem the Property pursuant to a tax lien it had filed against James Moore in Hennepin County in June 1996.  On April 11, 2005, the IRS presented funds to redeem the Property.  The Hennepin County Sheriff rejected the IRS's attempt to redeem the property and declined to issue a Certificate of Redemption because the Sheriff was persuaded that the IRS's redemption period had expired and the IRS had failed to provide the Sheriff copies of its Notices of Intent to Redeem, as required by law.  On April 12, 2005, the IRS drafted its own Certificate of Redemption pursuant to 26 U.S.C. § 7425(d) (2000), and on April 15, 2005, it directed the Hennepin County Sheriff to forward the proffered funds to Avidigm.

On May 17, 2005, REES attempted to redeem the Property from Avidigm.  Because the IRS had already issued its own Certificate of Redemption, Avidigm was unable to provide REES with one.  On May 18, 2005, REES paid $96,915.77 to the Hennepin County Sheriff for the Property.  The Sheriff informed REES that a Certificate of Redemption could not be issued because the IRS was a prior redeeming lienholder and the amount REES tendered was

insufficient to pay the IRS's lien.  The Sheriff agreed to hold the funds until a court order was issued directing the Sheriff to issue a Certificate of Redemption.

REES brought this action to quiet title on May 25, 2005.  It alleges that the IRS failed to timely redeem the Property, failed to provide the Sheriff a copy of its Notices of Intent to Redeem as required by Minn. Stat. § 580.24(a)(3) (Supp. 2005), and that the IRS's conduct thwarted REES's attempt to redeem the Property.  The IRS now moves to dismiss REES's Complaint.

## II.    DISCUSSION

The IRS argues that this case should be dismissed because REES does not have standing to bring the lawsuit.  If REES lacks standing, the Court has no subject matter jurisdiction over its claims.  *See Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005).  The IRS's motion is, therefore, properly considered under Rule 12(b)(1).  *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).  "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'"  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Id.* (internal citations omitted).  In a factual attack, the court inquires into and resolves factual disputes.  *Faibisch*, 304 F.3d at 801. Here, the IRS has not submitted any materials outside the Complaint and the Court need not resolve any factual disputes.  The Court therefore views the IRS's motion as a facial attack. Accordingly, the Court assumes all facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to REES.  *See Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986).  The Complaint should only be dismissed if it appears that REES

cannot prove any set of facts that would entitle it to relief. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).

To establish standing under Article III of the U.S. Constitution, REES must allege, among other things, invasion of a legally protected interest. *Young Am. Corp.*, 424 F.3d at 843. The IRS asserts that REES does not have a legally protectable interest in the Property—the interest REES identified as at stake in its Complaint—because REES failed to timely exercise its right of redemption. *Cf. Graybow-Daniels Co. v. Pinotti*, 255 N.W.2d 405, 406-07 (Minn. 1977) (holding that failure to exercise right to redeem extinguished interest in property).

The process by which a mortgagor and its creditors may exercise their rights of redemption is statutorily governed. After a sheriff's sale of a foreclosed property, the mortgagor or mortgagor's personal representatives or assigns may redeem the property at issue, provided the redemption occurs within the time prescribed by statute—in this case, within six months after such sale. *See* Minn. Stat. § 580.23 (Supp. 2005). If the mortgagor does not redeem, creditors having legal or equitable liens upon the mortgaged property may redeem as provided in Minn. Stat. § 580.24(a):

> If no redemption is made by the mortgagor, the mortgagor's personal representatives or assigns, the most senior creditor having a legal or equitable lien upon the mortgaged premises, or some part of it, subsequent to the foreclosed mortgage, may redeem within seven days after the expiration of the redemption period determined under section 580.23 or 582.032, whichever is applicable; and each subsequent creditor having a lien may redeem, in the order of priority of their respective liens, within seven days after the time allowed the prior lienholder by paying the amount required under this section.

A creditor may have multiple liens on the subject property; ordinarily, each lien entitles that creditor to a separate seven-day redemption period. *See First Nat'l Bank of Glencoe/Minnetonka v. Pletsch*, 543 N.W.2d 706, 711 n.6 (Minn. Ct. App. 1996).

The parties presently dispute where REES falls in the redemption schedule.   REES alleges that it is a junior creditor to the IRS and was therefore not required to redeem until May 18, 2005.   REES maintains that the Moores, having assumed the mortgage, had until March 16, 2005, to redeem the Property as the mortgagors of the Property.   The IRS, having filed three Notices of Intent to Redeem, had until April 6, 2005, or three seven-day periods from March 16, 2005, to redeem the Property.   Finally, REES, having recorded its six liens after the IRS filed its lien, had until May 18, 2005, or six seven-day periods from April 6, 2005, to redeem.

The IRS, on the other hand, asserts that at the time the Moores gave REES the six mortgages, the Moores were the senior-most creditors with respect to the Property.[1]   The IRS further argues that when the Moores gave REES the mortgages, the only conveyable interest they had was a right of redemption; they did not have a real property interest upon which to grant a lien because they gave the mortgage after the foreclosure sale.   The IRS reasons that the effect of the mortgages was to assign to REES the Moores' right of redemption.   Accordingly, the IRS insists that REES stepped into the shoes of the Moores and was required to redeem the Property by March 23, 2005, or one seven-day period after the Sherrys' six-month redemption period expired.   Because REES did not, it waived its rights in the Property.

In the Report and Recommendation, the magistrate judge agreed with the IRS.   After conducting a de novo review, the Court concludes that Minnesota state law, which governs this dispute, counsels a different result.   Initially, the Court notes that, as contract-for-deed vendees, the Moores owned equitable title to the Property.   *See Stiernagle v. County of Waseca*, 511 N.W.2d 4, 5 (Minn. 1994) (citing *Petition of S.R.A., Inc.*, 18 N.W.2d 442, 450 (Minn. 1945)). They had full possession and enjoyment of the Property, *see id.*; they were entitled to mortgage

[1]       According to the IRS, the Moores recorded their contract for deed before any other creditor recorded their liens against the land.

their interest in it,  *see Gilbert Builders, Inc. v. Cmty. Bank of DePere*, 407 N.W.2d 706, 708-09 (Minn. Ct. App. 1987).  Any such mortgages were enforceable so long as the contract for deed was kept in force.  *See id*. at 709.  At this stage, there is no dispute that the contract for deed has at all times been kept in force.

The Court turns to the primary question before the Court, that is, whether the September 16, 2004, foreclosure sale had any effect on what rights the Moores could mortgage.  The IRS maintains that the only right a defaulting landowner has in his property after the property has been sold at a foreclosure sale is his right to redeem the property.  Thus, according to the IRS, any mortgagee taking its interest after a foreclosure sale must redeem within the mortgagor's redemption period to avoid forfeiting its right.  The Court disagrees.  Under Minnesota law, when property is sold at a foreclosure sale, title does not pass to the purchaser immediately. Instead, title passes upon expiration of the mortgagor's time for redemption.  *See* Minn. Stat. § 580.12 (2004); *Fredin v. Cascade Realty Co.*, 285 N.W. 615, 618 (Minn. 1939); *Bowen v. Bankers' Life Co.*, 239 N.W. 774, 775 (Minn. 1931) (land not lost to mortgagors merely upon foreclosure sale; loss of title occurs when mortgagors fail to redeem); *Johnson v. Melges*, 203 N.W. 983, 983 (Minn. 1925) ("*When the period for redeeming from the foreclosure sale expired, all the estate or interest which they had in the property terminated.*" (Emphasis added)). Accordingly, a landowner can grant a mortgage upon the real property after the real property has been sold to another at a foreclosure sale, so long as the mortgage is granted before the end of the landowner/mortgagor's redemption period.  *See Bovey de Laittre Lumber Co. v. Tucker*, 50 N.W. 1038, 1039 (Minn. 1892).  Consistent with these principles, Minnesota courts have on multiple occasions treated mortgagees who were granted their mortgages by the foreclosed-upon mortgagor as separate lien creditors each entitled to their own period of redemption,

notwithstanding the fact that the mortgages were granted after the foreclosure sale. *See generally Thielen v. Strong*, 238 N.W. 678 (Minn. 1931); *Cont'l Mut. Life Ins. Co. v. King*, 75 N.W. 376 (Minn. 1898); *Pletsch*, 543 N.W.2d at 706. This treatment furthers the purpose of "mak[ing] the land bring its utmost value while preserving the rights of each creditor according to the seniority of his lien." *Bartleson v. Munson*, 117 N.W. 512, 514 (Minn. 1908).

The Court recognizes that mortgages granted by contract-for-deed vendees are not identical to mortgages granted by those who own both legal and equitable title to land. *See Gilbert Builders*, 407 N.W.2d at 708-09. Nevertheless, the Court concludes that the same principles articulated above apply equally in situations where the mortgagor is a contract-for-deed vendee: absent a cancellation of the contract for deed by the vendor, the vendee may grant a mortgage enforceable against his property until the vendee's time for redemption has expired under Minn. Stat. § 580.23.[2] Each mortgage granted by the vendee entitles its holder to a separate redemption period. Therefore, assuming all facts in the Complaint are true, REES does not merely step into the shoes of the Moores for purposes of the redemption schedule. Rather, REES was a lien creditor who, having filed a separate Notice of Intent to Redeem for each of its six liens, was entitled to a separate period of redemption for each of those liens. Moreover, because REES allegedly recorded its six liens after the IRS recorded its lien, REES is junior to the IRS. *See United States v. Dairy Farm Leasing Co.*, 747 F. Supp. 1335, 1338 (D. Minn. 1990) ("It is well settled . . . that priority for redemption purposes is determined by the time of

---

[2]	In light of the extent of a contract-for-deed vendee's interests, the Court disagrees with the IRS's contention that the Moores are properly considered "creditors" within the meaning of Minn. Stat. § 580.24. Rather, the Moores are entitled to the rights and responsibilities afforded the mortgagor and the mortgagor's personal representatives or assigns under Minn. Stat. § 580.23. *Cf. Thielen*, 238 N.W. at 679 (holder of life estate in mortgaged land required to redeem within the mortgagor's redemption period).

record without regard for the nature of the lien.").  REES has sufficiently alleged an interest in the Property.  Accordingly, the IRS's motion to dismiss for lack of standing is denied.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    The IRS's Motion to Dismiss [Docket No. 4] is DENIED.

Dated:  February 13, 2006

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
