UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Real Estate Equity Strategies, LLC,

        Plaintiff,

v.                                                     Civil No. 05-1008 (JNE/SRN)
                                                   ORDER

Internal Revenue Service,
Department of the Treasury,

        Defendant.

---

Jack E. Pierce, Esq., Pierce Law Firm, P.A., appeared for Plaintiff Real Estate Equity Strategies, LLC.

Michael R. Pahl, Esq., United States Department of Justice, appeared for Defendant Internal Revenue Service.

---

Real Estate Equity Strategies, LLC (REES), brought this action against the Internal Revenue Service (IRS) to quiet title to a parcel of property located at 14909 Crown Drive, Minnetonka, Minnesota (Property). REES alleges that the IRS, a lien creditor with respect to the Property, failed to timely redeem the Property after the Property was sold at a sheriff's sale; failed to provide the Hennepin County Sheriff with copies of its Notices of Intention to Redeem the Property, as required by Minn. Stat. § 580.24(a)(3) (Supp. 2005); and that the IRS's conduct thwarted REES's attempt to redeem the Property. REES seeks an Order declaring the IRS's Certificate of Redemption invalid; declaring that the IRS has no right, title, or interest in or lien upon the Property; directing the Hennepin County Sheriff to issue a Certificate of Redemption to REES as to the Property; and, in the event the aforementioned relief is not granted, an Order requiring the IRS to pay REES an amount "in excess of $268,084.23." The case is before the

Court on cross-motions for summary judgment. For the reasons set forth below, the Court grants in part and denies in part REES's motion and denies the IRS's motion.

## I.     BACKGROUND

The facts of this case are generally undisputed. On July 27, 1990, James and Kathryn Moore purchased the Property by way of contract for deed from Brian and Kimberly Sherry. At the time of execution of the contract for deed, Duval Federal Savings & Loan Association (Duval) owned a mortgage on the Property. Under the contract for deed, the Moores assumed the Duval mortgage[1] and were required to make direct payments to the Sherrys. In 1990, the Sherrys assigned their right to the direct payments to Fleet Finance, Inc., which agreed to purchase from the Sherrys the contract for deed on the condition that the Duval mortgage assumption had been approved. In 1993, Duval assigned the mortgage to Midland Mortgage Company (Midland).

In 1995, the Moores satisfied the portion of the contract for deed requiring them to make direct payments to the Sherrys' assignee, Fleet Finance. During the time they were making these payments, however, the Moores experienced financial difficulties. They failed to pay, at least in part, their income taxes for the years 1987-1994. As a result, in 1996, the IRS filed three separate tax liens against James Moore. The Moores filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code on November 20, 2002. On February 19, 2003, the Moores

---

[1]     The IRS argues that the Duval mortgage was not assumable. The IRS has not, however, offered any evidence in support of its argument. On the other hand, REES has offered unrebutted evidence that, in 1990, the Sherrys sought to sell their interest in the contract for deed to Fleet Finance. Fleet Finance agreed to do so, but not before being assured that the Duval mortgage assumption had been approved. The fact that Fleet Finance did purchase the contract for deed is evidence that the mortgage was assumable. Even if the mortgage was not assumed, however, this fact does not affect the outcome of this case.

were granted a discharge from their tax obligations. The IRS's liens on the Property, however, were not discharged.

In addition to failing to pay their income taxes, the Moores defaulted on the mortgage on the Property they had assumed. As a result, the mortgage was foreclosed, and the Property was sold at a sheriff's sale on September 16, 2004. Avidigm Capital Group, Inc. (Avidigm), was the highest bidder, paying $90,000.00. The sheriff's Certificate of Sale was recorded in the office of the County Recorder.

The mortgagor's redemption period for the Property expired on March 16, 2005. Prior to that date, on March 10, 2005, the IRS filed with the Hennepin County Recorder three separate Notices of Intention to Redeem. On March 14, 2005, the Moores granted REES six separate mortgages on the Property, each with its own independent consideration. On March 16, 2005, REES filed with the Hennepin County Recorder six separate Notices of Intention to Redeem.[2]

On April 11, 2005, the IRS presented to the Sheriff $96,915.77 for purposes of redeeming the Property. The Hennepin County Sheriff rejected the IRS's attempt to redeem the property and declined to issue a Certificate of Redemption. The Sheriff wrote in relevant part:

> On April 11, 2005, the IRS presented funds in the amount of $96,915.77, payable to Avidigm Capital Group, Inc., and documents to the sheriff with a request to redeem a property bearing the legal description, Lot 1, Block 2, West Acres. This property was sold at a sheriff's sale on September 16, 2004 to Avidigm Capital Group, Inc. to foreclose a mortgage interest held by Midland Mortgage Co. The redemption period expired on March 16, 2005. The claim to redeem presented to sheriff was on the basis that the IRS is a junior creditor, holding three federal tax liens.
>
> In determining if authority exists to issue a certificate of redemption, the sheriff observes that under Minnesota Statute 580.24, as amended, the last of the seven-day periods created by the three notices of intention to redeem filed with

---

[2] The Notices of Intention to Redeem were actually filed by REES MAX, LLC. The parties agree that this was a scrivener's error that may be overlooked for purposes of the present motions.

the county recorder by the United States of America expired on April 6, 2005. In addition, those notices were not filed with the sheriff, as the statute requires. Based on current practice, and understanding of existing statutes and case law, the sheriff has not recognized any earlier seven-day periods that the IRS might have recognized from other recorded liens because those lienholders did not file notices of intention to redeem.

Consequently, the sheriff does not appear to have the authority to issue a certificate of redemption as you have requested.

Notwithstanding the Sheriff's declination, on April 12, 2005, the IRS drafted its own Certificate of Redemption pursuant to 26 U.S.C. § 7425(d) (2000). On the same day, the IRS filed an affidavit with the Hennepin County Recorder representing that the Moores owed the IRS $309,952.12.[3] On April 15, 2005, it directed the Hennepin County Sheriff to forward the proffered funds to Avidigm.

On May 17, 2005, REES attempted to redeem the Property from Avidigm. Because the IRS had already issued its own Certificate of Redemption, Avidigm informed REES that it could not issue REES a certificate. Nevertheless, on May 18, 2005, REES tendered $96,915.77 to the Hennepin County Sheriff for the Property. The Sheriff informed REES that a Certificate of Redemption could not be issued, writing in relevant part:

> On May 18, 2005, your client, Real Estate Equity Strategies, L.L.C., represented by Mr. Chadwick Banken, presented funds in the amount of $96,915.77, and documents to the sheriff with a request to redeem a property, legally described in part as Lot 1, Block 2, West Acres, which sold at a sheriff's foreclosure sale on September 16, 2004 to Avidigm Capital Group, Inc. to foreclose a mortgage interest held by Midland Mortgage Co.
>
> In the process to prepare a certificate of redemption, the sheriff sees evidence of a prior certificate of redemption and affidavit supporting that redemption, filed with the county recorder as document numbers 8564422 and

---

[3]   On April 11, 2005, Revenue Officer Cheryl Bird sent the Hennepin County Sheriff a letter certifying that the Moores' tax liability currently outstanding and secured by tax liens on the Property was $438,732.27. The IRS has not explained this discrepancy. In any event, the affidavit filed with the Hennepin County Recorder is conclusive as to the amount for purposes of redemption. *See In re Brainerd Nat'l Bank*, 383 N.W.2d 284, 289 n.6 (Minn. 1986).

4

>8564421 respectively, filed April 15, 2005.  The affidavit states that the amount due to the prior redeeming lienholder, shown as the United States Secretary of Treasury, as of April 13, 2005, is $309,952.12.  I believe you have a copy of this certificate.
>
>Because the amount tendered is insufficient to pay the prior redeeming lienholder the amount shown in its affidavit, as required by Minn. Stat. § 580.25, the sheriff does not appear to have the authority to issue a certificate of redemption as requested.

The Sheriff agreed to hold REES's proffered funds "until a court order is obtained that directs the sheriff to issue a certificate of redemption and make payment to the prior redeeming party, or until [REES] request[s] in writing the return of the funds and documents."  REES brought this action to quiet title on May 25, 2005.

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In this case, the primary dispute is whether the IRS timely and properly redeemed the Property. If the IRS did so, there is no dispute that REES's attempted tender was insufficient and the Sheriff properly rejected it. If the IRS did not timely and properly redeem the Property, however, the IRS's Certificate of Redemption must be revoked and REES might be entitled to a Certificate of Redemption.

Under 26 U.S.C. § 7425(d)(1), the United States may redeem property sold to satisfy the interests of a senior lienor by redeeming the property "within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer." Whether the United States redeems within 120 days from the date of the sale or within a longer period allowed for redemption under local law, section 7425 and applicable Treasury Regulations "govern the amount to be paid and the procedure to be followed" for redemption. 26 C.F.R. § 301.7425-4(a)(2)(ii) (2005).

In this case, there is no dispute that the United States did not attempt to redeem the property within 120 days from the date of the foreclosure sale. Rather, the United States elected to attempt redemption under the longer period allowable under local law. Under Minnesota state law, when property has been sold at a foreclosure sale, "the mortgagor, the mortgagor's personal representatives or assigns" may redeem the property, provided they do so within six months after the sale. To redeem, they must pay "the sum of money for which [the property] was sold" together with interest. Minn. Stat. § 580.23, subd. 1 (Supp. 2005). If the mortgagor or the mortagor's personal representatives or assigns do not redeem, creditors having legal or equitable liens upon the mortgaged property may redeem as provided in Minn. Stat. § 580.24(a):

> If no redemption is made by the mortgagor, the mortgagor's personal representatives or assigns, the most senior creditor having a legal or equitable lien upon the mortgaged premises, or some part of it, subsequent to the foreclosed mortgage, may redeem within seven days after the expiration of the redemption

6

> period determined under section 580.23 or 582.032, whichever is applicable; and each subsequent creditor having a lien may redeem, in the order of priority of their respective liens, within seven days after the time allowed the prior lienholder by paying the amount required under this section.

In other words, under Minn. Stat. § 580.24, once the mortgagor's redemption period ends, each potential redemptioner has a successive seven-day period for redemption, proceeding by order of seniority.[4] To be a potential redemptioner, a lienor or mortgagee must record a Notice of Intention to Redeem during the mortgagor's six-month redemption period. *See* Minn. Stat. § 580.24(a); *First Nat'l Bank of Glencoe/Minnetonka v. Pletsch*, 543 N.W.2d 706, 707 n.1 (Minn. Ct. App. 1996) (applying a previous version of the statute in which the redemption period was five rather than seven days; noting that "[c]reditors may create a five-day redemption right only if they file a Notice of Intent to Redeem the mortgage within the mortgagor's redemption period."); *Irwin Union Bank & Trust Co. v. Sheriff of Washington County*, No. A04-1329, 2005 WL 894770, at *2 (Minn. Ct. App. April 19, 2005).

In this case, the only creditors that filed Notices of Intention to Redeem within the mortgagor's redemption period were the IRS and REES. The IRS filed three Notices of Intention to Redeem, and REES filed six Notices of Intention to Redeem. The IRS's liens were recorded prior to REES's liens and were therefore senior to REES's liens. *See Timeline, LLC v. Williams Holdings #3, LLC*, 698 N.W.2d 181, 185 n.2 (Minn. Ct. App. 2005) (citing *United States v. Dairy Farm Leasing Co.*, 747 F. Supp. 1335, 1338 (D. Minn. 1990)). Because the IRS was the senior potential redemptioner and filed three Notices of Intention to Redeem corresponding to its three liens, it was required to redeem the property by April 6, 2005, or three seven-day periods after March 16, 2005, the end of the mortgagor's six-month redemption

---

[4] A creditor may have multiple liens on the subject property; ordinarily, each lien entitles that creditor to a separate seven-day redemption period. *See First Nat'l Bank of Glencoe/Minnetonka v. Pletsch*, 543 N.W.2d 706, 711 n.6 (Minn. Ct. App. 1996).

7

period.  The IRS, however, did not attempt to redeem the property until April 11, 2005.  It therefore did not timely redeem the Property, and its redemption was ineffective.

The IRS's contention that the Moores were creditors with a seven-day right of redemption commencing immediately after the mortgagor's six month period of redemption and ending just before the IRS's period of redemption began—thereby extending the IRS's period of redemption to April 13, 2005—is not well-taken.  The Moores, as contract for deed vendees, are not properly conceived as creditors with respect to the land.  The IRS apparently harbors the misimpression that only one entity can be a mortgagor for purposes of Minn. Stat. § 580.23-.24.  This is not an accurate statement of Minnesota law.  *See Thielen v. Strong*, 238 N.W. 678, 679 (Minn. 1931) (holding that that multiple entities, including a life tenant and all remaindermen, were required to redeem within the mortgagor's redemption period).  In this case, the Moores are more akin to assignees of the original mortgagors than to creditors with respect to the land.  *See Cuilerier v. Brunelle & Others*, 33 N.W. 123, 124 (Minn. 1887) (holding that one cannot be both a mortgagor and a creditor for purposes of the Minnesota redemption statutes).  The Moores had satisfied their obligation to make direct payments to the Sherrys' assignee, Fleet Finance,[5] and had assumed the Duval mortgage.  Even if the Moores were properly conceived as lien creditors for purposes of the Minnesota redemption statutes, however, they did not file a Notice of Intention to Redeem and therefore did not create for themselves a seven-day redemption period.  There was therefore no intervening seven-day redemption period between the mortgagor's redemption period and the commencement of the IRS's redemption period.  The IRS was required to redeem by April 6, 2005.  It did not do so.

---

[5] For this same reason, the Court cannot conclude that the Sherrys or Fleet Finance were lien creditors entitled to a seven-day redemption period prior to the IRS's redemption period.

Because the Court has determined that the United States did not timely redeem, the Court need not reach the question of whether the IRS followed the proper procedures for redemption. The IRS's Certificate of Redemption must be revoked. *See* 26 C.F.R. § 301.7425-4(c)(3) ("If a certificate of redemption has been erroneously prepared and filed because the redemption was not effective, the district director shall issue a document revoking such certificate of redemption and such document shall be conclusively binding upon the United States against a purchaser of the property or a holder of a lien upon the property.").

The IRS next argues that even if it did not timely and properly redeem the Property, REES similarly failed to follow the required redemption procedures and is therefore not entitled to a Certificate of Redemption. Specifically, the IRS argues that REES did not tender an adequate sum to redeem the Property and failed timely to provide the Hennepin County Sheriff with copies of its Notices of Intention to Redeem. Because the IRS's attempted redemption was not effective, it concedes that its lien on the property was extinguished if it did not timely redeem, and it suffers no prejudice as a result of any alleged deficiencies in REES's redemption, the IRS does not have standing to object to REES's alleged inadequacies. *Cf. Remole v. Jonathan Dev. Corp.*, 277 N.W.2d 362, 363 (Minn. 1979) (concluding that a holder of a sheriff's certificate of sale had no standing to contest a lienholder's failure to file a timely Notice of Intention to Redeem because the holder had no right to redeem). Accordingly, the Court declines to entertain the IRS's objections.

With regard to REES's request for a declaration that REES is entitled to a Certificate of Redemption as to the Property, the Court notes that "declaratory relief may properly be withheld for nonjoinder of interested parties." *Diagnostic Unit Inmate Council v. Motion Picture Ass'n of Am., Inc.*, 953 F.2d 376, 379 (8th Cir. 1992). In this case, it seems likely that Avidigm has an

9

interest in whether REES tendered an adequate sum to redeem. The Court therefore declines at this time to declare that REES is entitled to a Certificate of Redemption. The Court leaves this issue for the Hennepin County Sheriff to consider.

Finally, the IRS argues that even if it failed to properly redeem and REES did properly redeem the Property, the IRS's tax lien attached to REES's right of redemption, thereby rendering REES liable to the IRS in an amount in excess of $400,000. REES, on the other hand, asks the Court to declare that the IRS does not have any right, title, or interest in or lien upon the Property or upon any rights therein. This issue is not properly before the Court. The Sheriff has yet to determine whether REES has a legal interest in the Property. Accordingly, at this stage, this dispute between the IRS and REES is hypothetical. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (concluding that the basic inquiry when determining whether a dispute is justiciable is "whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract" (quotations omitted)). Moreover, to the extent the IRS seeks a declaration that it has a lien on the Property or on some interest therein, the Court notes that the IRS has not asserted a counterclaim in this case. The IRS's arguments in support of this request seem tortured, but in any event, the Court declines to consider the request for the reasons stated above.

In sum, the Court concludes that the IRS improperly issued to itself a Certificate of Redemption. However, the Court declines at this time to declare that REES is entitled to a Certificate of Redemption. The Court similarly declines to decide whether the IRS has a lien upon the property or upon any rights therein, as this issue is not properly before the Court. Finally, to the extent REES seeks damages from the IRS, the Court has received no argument or

evidence regarding entitlement to such relief. The Court therefore also declines at this time to award damages.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. REES's motion for summary judgment [Docket No. 17] is GRANTED IN PART and DENIED IN PART.

2. The IRS's motion for summary judgment [Docket No. 23] is DENIED.

3. The IRS's Certificate of Redemption is invalid and shall be revoked.

4. Within ten (10) days of this Order, REES shall notify the Court of the status of its claim for damages. If necessary, the IRS shall respond to REES's submission within ten (10) days thereafter.

Dated: August 29, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge